# United States Bankruptcy Appellate Panel
## For the Eighth Circuit

_____

No. 17-6032
_____

In re: Erin R. Kemp, also known as Erin R. Guinn, also known as Erin R. Griffin

*Debtor*

------------------------------

Erin R. Kemp

*Plaintiff - Appellant*

v.

United States Department of Education

*Defendant - Appellee*

_____

Appeal from United States Bankruptcy Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: August 2, 2018
Filed: August 24, 2018

_____

Before SALADINO, Chief Judge, NAIL and SHODEEN, Bankruptcy Judges.

_____

SALADINO, Chief Judge.

The Appellant, Erin R. Kemp, appeals the order of the bankruptcy court[1] denying her request for discharge of her student loan obligations to the United States Department of Education ("DOE") under 11 U.S.C. § 523(a)(8). We have jurisdiction over this appeal. *See* 28 U.S.C. § 158(b). For the reasons that follow, we affirm.

## ISSUE

The ultimate issue on appeal is whether the bankruptcy court properly held that Appellant failed to meet her burden of proving an undue hardship under 11 U.S.C. § 523(a)(8). Appellant argues that the bankruptcy court did not apply the correct legal standards in its totality-of-the-circumstances analysis. Specifically, she believes the bankruptcy court improperly gave "dispositive effect" to her eligibility for a zero payment income-based repayment program offered by the DOE. Appellant also believes the bankruptcy court improperly applied an analysis of ability to make payments on the loan as directed by *Educ. Credit Mgmt. Corp. v. Jesperson (In re Jesperson)*, 571 F.3d 775 (8th Cir. 2009). Finally, Appellant believes the bankruptcy court made clearly erroneous factual findings regarding her present income and expenses.

## STANDARD OF REVIEW

Whether excepting a debtor's student loan debt from discharge would impose an undue hardship is a conclusion of law that we review de novo. *Walker v. Sallie Mae Servicing Corp. (In re Walker)*, 650 F.3d 1227, 1230 (8th Cir. 2011) (citing *Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 553 (8th Cir. 2003)). "Subsidiary findings of fact on which the legal conclusion is based are reviewed for clear error." *Jesperson*, 571 F.3d at 779 (citing *Reynolds v. Penn. Higher Educ.*

---

[1]The Honorable Ben Barry, United States Bankruptcy Judge for the Western District of Arkansas.

-2-

*Assistance Agency (In re Reynolds)*, 425 F.3d 526, 531 (8th Cir. 2005)). "We will not upset the bankruptcy court's findings of fact unless, after reviewing the entire record, we are left with the definite and firm conviction that a mistake has been made." *Nielsen v. ACS, Inc. (In re Nielsen)*, 473 B.R. 755, 758 (B.A.P. 8th Cir. 2012), *aff'd*, 502 Fed. Appx. 634 (8th Cir. 2013) (citations omitted).

## FACTUAL BACKGROUND

In February 2016, Appellant filed a petition under Chapter 7 of the United States Bankruptcy Code in the Western District of Arkansas. On May 3, 2017, she filed the adversary proceeding that is the subject of this appeal, seeking a determination that her student loans owed to the DOE were dischargeable in her bankruptcy case.

At the time of trial, Appellant was a 36-year-old single mother to a 13-year-old daughter. She began working part-time for Arvest Bank in 1998 at a starting wage of approximately $10.00 per hour. While working for Arvest, Appellant began attending college, but withdrew after two semesters and began working full-time at Arvest. In 2007, while still working full-time at Arvest, she began taking online courses through Ashford University to obtain a college degree and enhance her ability to be promoted within Arvest. Her education at Ashford was financed with the student loan that is the subject of this case. In 2010, she obtained a bachelor's degree in psychology with a minor in sociology.

The Appellant worked at Arvest Bank for 17 years and received numerous promotions and pay raises. She began as a teller, was promoted to an administrative assistant, then a credit manager, an assistant branch manager, and finally a branch manager. As branch manager, her salary was $45,000.00 per year, plus periodic bonuses. She also had health insurance and a retirement plan, which included contributions from Arvest.

While employed at Arvest, Appellant was able to remain current on her student loan payments of $350.00 per month. However, she began having difficulty paying her student loan when she resigned from her job at Arvest in June 2015, eight months prior to filing her bankruptcy case. Appellant testified that she resigned her job at Arvest because the working environment had become too stressful, resulting in anxiety and depression for which she takes medication. She also testified that she left Arvest on good terms and could even be employed there again, albeit at a lower level position.

Upon leaving Arvest, Appellant withdrew $35,000.00 from her Arvest retirement account. That money was quickly used to purchase or pay off a truck for her then husband, make a loan to her stepson, and pay other bills. None of the money from her 401(k) was paid toward her student loan.

During the eight months between leaving Arvest and filing her Chapter 7 bankruptcy case, the Appellant began working part-time for Lowe's. At the time of the trial, she was making $13.46 per hour and estimated that she averages around $400.00 per biweekly paycheck. Appellant testified that she is a good employee and Lowe's allows her to set her own hours. She also believes that Lowe's would hire her full-time – but if she did so, she would lose the ability to control her schedule. The flexible schedule allows her to spend additional time with her daughter and to run a small childcare business. With her job at Lowe's, Appellant has health, dental, vision, disability, and life insurance, but the coverage is not as comprehensive as the insurance benefits available to full-time employees.

A substantial portion of Appellant's testimony at trial involved the childcare business. Essentially, during the school year, the Appellant provides before- and after- school childcare to three children, including the provision of breakfast, snacks, and driving to and from school and after-school activities. She also watches two of

the children on certain days of the week during the summer months. According to Appellant's amended Schedule I, she nets $100.00 per month from her part-time childcare business. In addition, she receives $175.00 per month in child support and receives a substantial tax refund every year, which she prorates to approximately $450.00 per month. In sum, between her income from Lowe's, net childcare business income, child support, and her prorated tax refund, Appellant estimates her monthly net income to be $1,711.00.

Appellant is currently enrolled in an income-based repayment plan with the DOE. Under that plan, her income and expenses are reviewed on an annual basis, and a payment amount is set based on her ability to pay. After a period of time (perhaps as long as 25 years – the record is not entirely clear on this point), the balance of the loan is forgiven if she has completed all payments under the income-based repayment plan. Based on Appellant's current income and expenses, her monthly payment due to the DOE is $0.00.

## BANKRUPTCY COURT OPINION

After a trial, the bankruptcy court found that the Appellant did not meet her burden of proving that the student loan would impose an undue hardship sufficient to discharge the debt under 11 U.S.C. § 523(a)(8), and denied her complaint. The bankruptcy court specifically found that "the debtor appeared intelligent, composed, pleasant, accomplished, and articulate – qualities that have undoubtedly contributed to the debtor's historical success in the workplace." In its opinion, the bankruptcy court reviewed amended Schedules I and J, which were filed in her underlying bankruptcy case on the day before trial. The bankruptcy court noted that the $100.00 per month estimated net income from the childcare business shown on the amended Schedule I was inconsistent with Appellant's testimony. Specifically, the bankruptcy court found that based on Appellant's testimony, her actual net income from the childcare business is about $670.00 per month. The bankruptcy court also noted that

amended Schedule J included $700.00 of "anticipated" monthly expenses comprised of $300.00 for a car payment, $300.00 to "upgrade health insurance," $50.00 for vacations, and $50.00 for emergencies. The court found that only $350.00 of the anticipated expenses were warranted – those for the car payment and emergencies. After the bankruptcy court made its adjustments to Appellant's income and expenses, the bankruptcy court found that she had a surplus (income in excess of expenses) of at least $105.00 per month.

In addition to reviewing Appellant's past, present, and reasonably reliable future financial resources, the bankruptcy court also considered additional factors that may be relevant to a determination of undue hardship as required by *Jesperson*. 573 F.3d at 784. In undertaking this analysis of all relevant facts and circumstances, the bankruptcy court specifically found that the Appellant's present inability to pay her student loan debt is entirely within her control. The bankruptcy court acknowledged that Appellant was a credible witness and believes that she has been diagnosed with anxiety and depression, but noted that she introduced no medical records or testimony to indicate the extent of those conditions and whether they make it impossible or even inadvisable to work full-time. The court noted Appellant testified that she could work full-time at Arvest or at Lowe's, and have better health insurance and other benefits, but chooses not to do so due to the flexibility of her part-time schedule.

The bankruptcy court stated "the Court finds that the debtor has prioritized the flexibility of a part-time schedule over a more lucrative full-time employment and – although the debtor's choice to spend more time with her family may be understandable to some extent – it is still *a choice*, and, by definition, within her control." The bankruptcy court further noted that when the Appellant was employed full-time, she made regular payments on her student loans without a problem. Finally, the bankruptcy court noted that the existing hardship is not long-term. Her daughter is entering high school and plans to attend college. The need to prioritize flexibility

-6-

of a part-time schedule over more lucrative full-time employment will not exist in a few years. In short, the bankruptcy court held:

> [A]lthough the Court does not believe that the debtor's expenses are extravagant, the Court cannot find that the debtor has made a good faith effort to maximize her income because – as the Court has already discussed in detail – she is choosing to work part-time despite at least two readily available options for her full-time employment.

Accordingly, the bankruptcy court denied Appellant's complaint.

## DISCUSSION

Bankruptcy Code § 523(a)(8) provides, in pertinent part, that a bankruptcy discharge does not discharge student loan debt "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor or the debtor's dependents[.]" 11 U.S.C. § 523(a)(8). The debtor bears the burden to prove undue hardship by a preponderance of the evidence. *Jesperson*, 571 F.3d at 779. The test used in the Eighth Circuit to determine undue hardship is the totality-of-the-circumstances test, as stated by the Eighth Circuit:

> In evaluating the totality-of-the-circumstances, our bankruptcy reviewing courts should consider: (1) the debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the debtor's and her dependent's reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding each particular bankruptcy case. Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt – while still allowing for a minimal standard of living – then the debt should not be discharged.

-7-

*Long*, 322 F.3d at 554-55 (citations omitted). Applying a de novo review, we determine that the bankruptcy court applied the correct standard, the totality-of-the-circumstances standard, and properly held that the Appellant failed to meet her burden of proving an undue hardship.

Appellant's briefing on appeal asserts three limited assignments of error. First, Appellant takes issue with certain of the legal standards used by the bankruptcy court in applying the totality-of-the-circumstances test. She believes the bankruptcy court improperly gave "dispositive effect" to her eligibility for a zero payment income-based repayment program offered by the DOE. However, that belief is simply not supported by the record. The references in the bankruptcy court's order to the income based repayment plan were in its analysis of "any other relevant facts and circumstances" as required by *Long* and *Jesperson*. Contrary to Appellant's assertion, the bankruptcy court said, "While the debtor's eligibility for an income-based repayment program is *not* dispositive, *it is a factor* that weighs against the discharge of the debt." (emphasis added). Clearly, the bankruptcy court did *not* give dispositive effect to Appellant's eligibility for an income based repayment program and this assignment of error is without merit.

Second, Appellant takes issue with the bankruptcy court's refusal to hold that the student loan debt should be discharged if debtor is unable to pay the full contractual payment amount at the time the bankruptcy case is filed. On this point, the bankruptcy court held:

> Also, the Court will state definitively that it disagrees with the debtor's contention that the Court must discharge a student loan debt if it appears on the day of trial that the debtor will be unable to afford to repay the entire amount of the debt without undue hardship. To the contrary, the Eighth Circuit has stated unequivocally that "a student loan should

-8-

> not be discharged when the debtor has the ability to earn sufficient income to make student loan payments" under an income based program such as the one the debtor is participating in now and the one offered by DOE at trial. *See In re Jesperson*, 571 F.3d at 781 (emphasis added).

Appellant seems to be asking us to interpret *Long* and *Jesperson* in a way that prevents the bankruptcy court from considering available payment programs as a factor in the undue hardship analysis. She wants us to consider only whether she has the ability to pay the whole debt, without consideration of other repayment programs and options. However, the Eighth Circuit Court of Appeals has not imposed any such limitation and was clear in *Jesperson* that the bankruptcy court should consider the availability of other repayment programs and options, saying: "However, a student loan should not be discharged when the debtor has 'the ability to earn sufficient income to make student loan payments under the various special opportunities made available through the Student Loan Program.'" *Jesperson*, 571 F. 3d at 781 (citing *In re VerMass,* 302 B.R. 650, 660 (Bankr. D. Neb. 2003)). The bankruptcy court properly considered the payment programs as part of the review of "other relevant facts and circumstances" as required by the totality-of-the-circumstances test. This assignment of error is also without merit.

Appellant's third and primary contention on appeal is that the bankruptcy court clearly erred in calculating her present income and expenses by overstating her net business income and rejecting a $50.00 per month expense deduction for a vacation fund. We reject this assignment of error for several reasons.

First, Appellant had the "rigorous" burden of proving undue hardship by a preponderance of the evidence. *Id.* at 779. Unfortunately, the testimony and evidence regarding the childcare business was incomplete and inconsistent. Appellant gave estimates of food and fuel expenses for the childcare business, but also acknowledged that part of the food is consumed by Appellant and her own daughter, and some of the

transportation expenses relate to her daughter's school and activities. There was no clear breakdown of the actual expenses Appellant incurred just for the childcare business. It seems that the Appellant's estimate of $100.00 per month net income from the business is based on her tax returns, which allow deductions from taxable income for certain home and automobile expenses related to the business. However, for purposes of the undue hardship analysis, taxable income from the business is not equivalent to actual cash flow that can be used to make student loan payments. The bankruptcy judge made his calculations on readily identifiable testimony from the Appellant. It was Appellant's "rigorous burden" to show otherwise and we agree with the bankruptcy court that she failed to meet that burden.

Second, even if the bankruptcy court misunderstood some or part of Appellant's testimony, it only affected one element of the first prong of the totality-of-the-circumstances test. That is, it pertained only to the Appellant's present financial resources. As indicated, the test requires consideration of a debtor's past, present, and reasonably reliable future financial resources. The vacation fund and childcare income issue did not affect the court's consideration of Appellant's past financial resources (namely salary from Arvest Bank) or future financial resources (namely, from full-time employment).

Third, regardless of whether the Appellant's net monthly income from the childcare business is $100.00 as she suggests, or more than $600.00 as the bankruptcy court suggests, it does not change her student loan payment to the DOE. Her payment calculated under the DOE income-based repayment guidelines is $0.00. This zero payment amount was a factor considered by the bankruptcy court in its evaluation of undue hardship.

Fourth, and finally, it is clear from the bankruptcy court's opinion that Appellant's present financial condition was not a factor that weighed heavily in the hardship analysis. The bankruptcy court noted more than once that Appellant's present

financial difficulties are not expected to be long-term and are entirely within her own control due to choices she has made.

Accordingly, reviewing the record de novo, we note that the facts are undisputed that Appellant had no problem making (and did make) full student loan payments when she was employed as a full-time bank branch manager. She voluntarily left that employment and chooses to stay in her current part-time employment status to allow for a more flexible schedule. She testified to having opportunities to again work full-time, whether back at the bank or at Lowe's. No medical evidence was presented to indicate that the Appellant is unable to work on a full-time basis. We agree with the bankruptcy court that Appellant's current financial restraints are the result of choices she has made and are not long term. Therefore, we agree that Appellant failed to meet her burden of proving an undue hardship under 11 U.S.C. § 523(a)(8).

## CONCLUSION

For the foregoing reasons, we affirm the bankruptcy court.

_____